# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**JESSIE JAMES EICHELBERGER,**

     **Plaintiff,**

**vs.**                           **Case No.  1:16cv342-CAS**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social**
**Security,**

     **Defendant.**

_____/

## <u>MEMORANDUM OPINION AND ORDER</u>

This Social Security case was referred to the undersigned magistrate judge upon consent of the parties and reference by United States District Judge William Terrell Hodges.  ECF No. 14.  After consideration of the entire record, the Court reverses the decision of the Acting Commissioner (Commissioner) and remands the case for further consideration.

## I. Procedural History

On February 12, 2013, Plaintiff filed an application for Supplemental Security Income, alleging disability beginning February 16, 2011. Tr. 95-115, 227-32, 250.[1] The claim was initially denied on April 9, 2013, and again on reconsideration on August 6, 2013. Tr. 103, 115. Plaintiff requested a hearing, and a hearing was held before Administrative Law Judge Kelley Fitzgerald (ALJ) on April 23, 2015. Tr. 56-89. A supplemental hearing was held on November 20, 2015, after additional medical records were submitted. Tr. 34-55. Both hearings were held in Jacksonville, Florida, and Plaintiff was represented by counsel in both hearings. Tr. 56, 34. Plaintiff testified at each hearing. Tr. 60-82, 40-51. Ted Mitchell, an impartial vocational expert, testified at the first hearing and A. Mark Capps, an impartial vocational expert, testified at the second hearing. Tr. 83-88, 51-54. On March 16, 2016, the ALJ entered an unfavorable decision concluding that the Plaintiff was not disabled, as defined in the Social Security Act, 20 C.F.R. § 416.920(g), and denying Plaintiff's claims. Tr. 19-29. Plaintiff's request for review was denied on

---

[1] Citations to the transcript/administrative record, ECF Nos. 11 (11-1 through 11-22), shall be by the symbol "Tr." followed by a page number that appears in the lower right corner of each page.

September 9, 2016. Tr. 1-3. Thus, the decision of the ALJ is the final

agency action. *See* 20 C.F.R. § 404.981.

On November 11, 2016, Plaintiff filed a Complaint in the United

States District Court, with exhibits, seeking review of the ALJ's decision.

ECF No. 1; ECF Nos. 1-1 through 1-5. On February 3, 2017, the

Defendant filed an Answer. ECF No. 10. The record was also filed on

February 3, 2017. ECF No. 11 (11-1 through 11-22). Both parties filed

memoranda of law, which have been considered. ECF Nos. 15, 16.

## II. Findings of the ALJ

The ALJ made several findings and conclusions relative to the issues

raised in this appeal:

> 1. "The claimant has not engaged in substantial gainful activity since February 12, 2013, the application date." Tr. 21 (citations omitted). The ALJ noted that the medical record suggests that the claimant worked as an auto mechanic subsequent to the application date, but that the work activity did not rise to the level of substantial gainful activity. *Id.*
>
> 2. "The claimant has the following severe impairments: disorders of the right hip; disorders of the spine; disorders of the left shoulder; and chronic obstructive disease (COPD)." Tr. 21. The ALJ noted that the record suggests excessive use of alcohol but does not show any ongoing diagnosis of a substance abuse disease; and that this is not a medically determinable impairment. *Id.*
>
> 3. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." Tr. 21. The ALJ noted that the claimant's

physical impairments, singly or in combination, do not meet or medically equal the criteria of the listed impairments, in particular the listing under Section 1.00 (Musculoskeletal Disorders) and 3.00 (Respiratory Impairments) in 20 C.F.R. Part 404, Subpart P, P, Appendix 1 (20 C.F.R. 416.920(d)). *Id.* The ALJ further noted that the medical records do not demonstrate that all the requirements set forth by any of the aforementioned listings have been met and that no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment (20 C.F.R. 416.920(c)). *Id.* at 21-22.

4. "[T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 416.967(a) except with a need for a handheld assistive device for any walking; no more than frequent climbing ramps/stairs; no more than occasional bilateral overhead reaching, stooping, crawling, climbing of ladders, ropes and scaffolds; no concentrated exposure to extreme heat/cold; avoid even moderate exposure to hazards (machinery, heights, etc.) or pulmonary irritants (dust, fumes, odors, gases, poor ventilation); no squatting or kneeling." *Id.* at 22.

5. "The claimant is unable to perform any past relevant work." Tr. 26.

6. "The claimant . . . was 42 years old, which is defined as a younger individual age 45-49, on the date the application was filed." *Id.*

7. "The claimant has a limited education and is able to communicate in English." *Id.*

8. "Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled." *Id.*

9. "Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.*

10. "The claimant has not been under a disability, as defined in the Social Security Act, since February 12, 2013, the date the application was filed." Tr. 27. (citing 20 C.F.R. 416.920(g)).

The ALJ decided that the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.  Tr. 27.

## III.  Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); *accord* <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence." <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[2]  The Court may not decide the facts anew, reweigh the

---

[2] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

evidence, or substitute its judgment for that of the Commissioner,

Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the

entire record, consider evidence detracting from the evidence on which the

Commissioner relied, and determine the reasonableness of the factual

findings. Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Parker v.

Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986). Review is deferential, but

the reviewing court conducts what has been referred to as "an independent

review of the record." Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir.

1985).

"In making an initial determination of disability, the examiner must

consider four factors: '(1) objective medical facts or clinical findings; (2)

diagnosis of examining physicians; (3) subjective evidence of pain and

disability as testified to by the claimant and corroborated by [other

observers, including family members], and (4) the claimant's age,

education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations

omitted). A disability is defined as a physical or mental impairment of such

severity that the claimant is not only unable to do past relevant work, "but

cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national

economy" in significant numbers. 42 U.S.C. § 423(d)(2)(A). A disability is

an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 416.909 (duration requirement).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212, 218 (2002).

The Commissioner analyzes a claim in five steps, pursuant to 20 C.F.R. § 416.920(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity [SGA]?
2. Does the individual have any severe impairments?
3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?
4. Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[3]

---

[3]  A residual functional capacity (RFC) is the most a claimant can still do despite limitations.  20 C.F.R. § 416.945(a)(1).  It is an assessment based upon all of the relevant evidence including the claimant's description of his limitations, observations by treating and examining physicians or other persons, and medical records.  *Id.*  The responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R. § 416.946(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term '*residual functional capacity assessment*' describes an adjudicator's finding about the ability of an individual to perform work-related activities.  The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator

5.  Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.  If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 416.920(a)(4)(v) & (g).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  The Eleventh Circuit has stated that

---

determine the most reasonable findings in light of all the evidence.").

"credibility determinations are the province of the ALJ." <u>Moore</u>, 405 F.3d at 1212.

## IV. Legal Analysis

### A. The Evidence

Plaintiff suffered a back injury on February 16, 2011, while at work, and was diagnosed with lumbar strain and pre-existing degenerative joint disease. Tr. 326, 586-613. He was evaluated for Workers' Compensation purposes by Drs. Gary Newcomer and Scott Wilson. On February 16, 2011, Dr. Wilson imposed a ten pound lifting limitation, along with other limitations. Tr. 611. On February 21, 2011, Dr. Wilson saw Plaintiff again for the same injury and found the back pain was continuing. Plaintiff was released to light duty after rest to allow medications to work, with restrictions on lifting no more than five pounds, along with other limitations. Tr. 592-93, 597. The same limitations were continued on February 28, 2011, by Dr. Newcomer. Tr. 586.

In March 2011, Plaintiff was diagnosed by Dr. Phillip Parr, M.D., as having an annular disc bulge with some mild facet arthropathy and mild chronic foraminal narrowing as shown on an MRI scan. Tr. 326. Plaintiff was given a back brace and a prescription for anti-inflammatory medication. *Id.* Later in March, Dr. Parr noted Plaintiff was wearing a back

brace but was unable to stand up straight due to severe spasm. Tr. 325.
An epidural cortisone injection was ordered, along with physical therapy.
*Id.* Plaintiff attended 21 physical therapy sessions in 2011, but continued to
have limitations in movement. Tr. 337. Marc Gruber, P.A., reported in
September 2011 that range of motion indicated that Plaintiff was not
showing improvement in physical therapy, although Plaintiff reported that
he was having a flare up at the time and thought he had been improving.
Tr. 337.

Plaintiff has chronic obstructive pulmonary disease and was seen in
the emergency room in February and September 2013 and several times in
2014 for exacerbation of that condition. Tr. 437-55, 690-717, 830-33, 912-
41. Plaintiff continued to smoke in spite of medical advice to quit. Tr. 74.
He reported to medical personnel seen in January 2016 that he had ceased
smoking. Tr. 1274. At the second hearing before the ALJ, on November
20, 2015, Plaintiff testified that he has been on a nebulizer for his COPD,
and had recently been prescribed oxygen, but could not afford it. Tr. 41.

Plaintiff underwent a consultative examination in April 2013, by Lance
Chodosh, M.D. Tr. 565-88. Dr. Chodosh evaluated Plaintiff's pulmonary
function and his range of motion in his lumbar spine, shoulders, and hips.
Tr. 570-72, 576. The straight leg raise was difficult to assess in the supine

position due to general pain, but was negative to 90 degrees bilaterally while sitting.  Tr. 576.  Plaintiff's balance was fair, but he walked slowly and was too weak to walk on his heels or toes and to squat and rise.  Tr. 576.  Dr. Chodosh assessed moderate COPD secondary to smoking, chronic active alcoholism, and poor general condition.  Tr. 577.  He concluded that Plaintiff could stand and walk "only occasionally" and that he needed an assistive device for walking more than 200 feet.  *Id.*  Plaintiff could sit and bend at the waist occasionally with support, but was unable to squat or kneel and could not lift or carry more than a few pounds.[4]  Tr. 577.  Dr. Chodosh found Plaintiff was able to handle objects.  *Id.*

At the reconsideration level in August 2013, a non-examining state Agency consultant, Joseph Chiaro, M.D., opined an RFC consistent with light work with limitations including frequent climbing ramps/stairs; kneeling and crawling; occasional climbing ladders/ropes/scaffolds; stooping and crawling; limited bilateral overhead reaching; avoiding concentrated exposure to extreme heat/cold and hazards; and avoiding even moderate exposure to fumes, odors, dusts, gases, and poor ventilation.  Tr. 110-14.

---

[4] Dr. Chodosh noted both that Plaintiff cannot lift "more than five pounds" and cannot lift "more than a few pounds."  Tr. 574, 576.

In June 2014, Plaintiff was seen for right shoulder pain following a fall, and was assessed with a humerus anterior dislocation. Tr. 621, 862. At that time, his musculoskeletal evaluation showed a normal range of motion in his other extremities and a normal gait. Tr. 621. In October 2014, a CT scan shown avascular necrosis of the right and left hip, with it most severe on the right. Tr. 801-02. An x-ray of the left shoulder showed mild left glenohumeral joint osteoarthritis. Tr. 1245-46.

In February 2015, bilateral femoral head osteonecrosis on the right hip was seen on CT scan. Tr. 1045-46. Plaintiff testified in the second hearing on November 20, 2015, that he was scheduled for a pre-surgery evaluation pertaining to hip replacement. Tr. 41-42. In October 2015, Chancellor F. Gray, M.D., an orthopedic surgeon, reviewed imaging of Plaintiff's noted avascular necrosis of the right hip and "subchondral insufficiency fracture of condyle of right femoral head, sequela." Tr. 1285. In January 2016, Dr. Gray noted that anti-inflammatories, cortisone injection, and narcotic medication for the hip pain provided minimal relief. Tr. 1267. At the November 20, 2015, hearing Plaintiff explained that he was given crutches, but he could not use them so he was given a walker. Tr. 46. In December 2015, Plaintiff was seen after a fall that exacerbated his hip pain. Tr. 1279. At that time, he reported that a hip steroid injection

had given him 75% pain relief, but it lasted for less than three weeks.
Tr. 1282.

January 5, 2016, records of University of Florida Physicians,
Department of Orthopedics, note that Plaintiff was to be scheduled for hip
surgery, subject to nicotine tests to avoid risk for complications.  Tr. 1277.
Plaintiff was informed that even "after undergoing total hip replacement
there may still be persistent pain or disability."  *Id.*  This January 5, 2016,
evaluation showed an antalgic gait, which an abnormal gait that indicates
pain.  Tr. 1281.  The notes also indicate that Plaintiff was working as an
automobile mechanic.  Tr. 1274.

### B.  Decision of ALJ

Plaintiff argues that the RFC determination is not supported by
substantial evidence for several reasons.  The Court discusses only
Plaintiff's contention that the ALJ failed to explain rejection of certain of the
consultative examiner's stated limitations in light of the residual functional
capacity assessment.  Dr. Lance Chodosh, the consultative examiner, in
his assessment, described Plaintiff's condition as including moderate
COPD secondary to smoking, chronic active alcoholism, and poor general
physical condition.  Tr. 577.  Dr. Chodosh concluded Plaintiff was able to
stand and walk "only occasionally;" that he required an assistive device to

walk more than 200 feet; that he could sit; that he could bend at the waist occasionally with support, handle objects, see, hear, and speak normally. Tr. 25, 577. Dr. Chodosh concluded that that Plaintiff cannot squat or kneel, and cannot lift or carry more than a few pounds.[5] Tr. 577.

The ALJ asserted that she gave great weight to the findings Dr. Chodosh made upon consultative examination in April 2013, but that Dr. Chodosh's stated "limitations are only credited to the extent that they are consistent with the established residual functional capacity assessment." Tr. 25. The ALJ did not, however, specify which of the limitations were not credited, why they were not credited, and which aspect of the RFC assessment was in conflict with Dr. Chodosh's stated limitations. Moreover, the ALJ did not make clear whether unspecified limitations were rejected before the ALJ made the final RFC assessment or after the fact.

Plaintiff contends that by crediting the stated limitations only to the extent they are consistent with the RFC assessment, the ALJ was crediting only those limitations that "fit a pre-determined RFC rather than utilizing Dr. Chodosh's competent medical opinion to determine the RFC." ECF No. 15 at 10. Plaintiff also correctly contends that the ALJ failed to reconcile

---

[5] *See* note 4 *supra*.

Dr. Chodosh's opinion with the RFC that offers conflicting limitations, failed to state which limitations were "consistent with the established [RFC] assessment," and failed to seek any clarification from Dr. Chodosh as to the full extent of Plaintiff's limitations rather than concluding that sedentary work accounts for all his limitations. ECF No. 15 at 11-12.

The ALJ relied on a vocational expert to conclude that there are jobs within the national economy in significant numbers that the claimant can perform. Tr. 26. The ALJ stated in the decision: "I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." Tr. 26. Based on the presentation of a hypothetical question, the vocational expert stated that Plaintiff would be able to perform the requirements of representative occupations such as addresser (DOT #209.587-010);[6] call out operator (DOT #237.367-014); and surveillance systems monitor (DOT #379.367-010). Tr. 26-27. The ALJ ultimately concluded that, considering the Plaintiff's age, education, work experience, and residual functional capacity, there are sedentary jobs that exist in

---

[6] The vocational expert provided the corresponding Dictionary of Occupational Titles (DOT) codes for each of the jobs named.

significant numbers in the national economy that the claimant can perform,

with certain additional limitations. Tr. 22, 26.

Sedentary work is defined as follows:

(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a). The ALJ found that Plaintiff could perform

sedentary work, as defined,

except with a need for a handheld assistive device for any walking; no more than frequent climbing ramps/stairs; no more than occasional bilateral overhead reaching; stooping, crawling, climbing of ladders, ropes and scaffolds; no concentrated exposure to extreme heat/cold; avoid even moderate exposure to hazards (machinery, heights, etc.) or pulmonary irritants (dust, fumes, odors, gases, poor ventilation), no squatting or kneeling.

Tr. 22. The finding did not address the conflict between Dr. Chodosh's

stated limitation that Plaintiff could lift only "a few pounds" with the definition

of "sedentary," which provides for lifting no more than ten pounds. The ALJ

did not explain the conflict between Dr. Chodosh's stated limitation that

Plaintiff could only stand and walk occasionally with the modification to the

ALJ's RFC assessment that indicates Plaintiff could perform up to frequent

climbing of ramps and stairs.

When using a vocational expert, the ALJ must pose hypothetical questions to determine whether a person with the same limitations as the claimant will be able to secure employment in the national economy. Humphries v. Barnhart, 183 F. App'x 887, 891 (11th Cir. 2006) (unpublished) (citing Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002)). The ALJ's hypothetical question to the vocational expert in the April 23, 2015, hearing did not include any weight limitations as to lifting which Dr. Chodosh included in his consultative report.[7] Tr. 84-86. In the November 20, 2015, hearing, the hypothetical question presented to the impartial vocational expert by counsel included a limitation of lifting no more than five pounds. Tr. 51. Neither of these hypotheticals included Dr. Chodosh's conclusion that Plaintiff could not lift or carry "more than a few pounds." Tr. 577. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227. See also Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985). The ALJ is not required, however, to include findings in the hypothetical that the

---

[7] The impartial vocational expert was asked by Plaintiff's counsel to add to the hypothetical question the limitation that Plaintiff could lift only a few pounds. Tr. 86. The vocational expert stated, "The individual with these limitations would be unable to sustain competitive employment at any great length." *Id.*

ALJ has properly rejected as unsupported. *See* Crawford v. Comm'r of
Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004); McSwain v. Bowen, 814
F.2d 617, 620 n.1 (11th Cir. 1987). The ALJ in this case, however, does
not provide a reasonable explanation of which of Plaintiff's impairments, as
found by Dr. Chodosh and contained in his stated limitations, were rejected
and why they were rejected. Nor did the ALJ attempt to reconcile any
difference between Dr. Chodosh's statement that Plaintiff could lift no more
than five pounds and his statement that Plaintiff could not lift "more than a
few pounds."

Further, additional medical evidence of Plaintiff's condition not
improving was submitted prior to the November 2015 hearing, but
Dr. Chodosh was not provided an opportunity to review the additional
medical information and provide an updated opinion. *See* Concepcion v.
Comm'r of Soc. Sec., 2013 WL 75142 (M.D. Fla. Jan. 7, 2013) (not
reported in F. Supp. 2d) (concluding that the ALJ's decision is not based on
substantial evidence where it relies on an "out-of-date consultative
examination report).

At the very least, the ALJ should have requested clarification from
Dr. Chodosh or referred Plaintiff for another consultative examination so
that the record could accurately reflect, with specificity, what sufficient

evidence supports the RFC.  Considering the record as a whole, the ALJ's finding that Plaintiff is not disabled is not supported by substantial evidence in the record and by application of the proper legal standards.  No determination is made whether Plaintiff is disabled.

## V.  Conclusion

Accordingly, pursuant to the fourth sentence in 42 U.S.C. § 405(g), the decision of the Commissioner to deny Plaintiff's application for Social Security benefits is **REVERSED** and this case is **REMANDED** for the ALJ to reconsider the RFC assessment and whether Plaintiff is in fact able to perform sedentary work; reconsider the opinion of Dr. Chodosh and/or refer Plaintiff for a second consultative examination; pose a complete hypothetical question to the vocational expert which accurately and unambiguously includes Plaintiff's functional limitations pertaining to lifting and walking; and conduct further proceedings deemed appropriate.

**IN CHAMBERS** at Tallahassee, Florida, on June 2, 2017.

**s/  Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**